UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHISN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL ALAN SANDERSFELD,<br><br>Defendant. | 4:18-CR-40019-001-KES<br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Paul Alan Sandersfeld, filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 126. Plaintiff, the United States of America, opposes the motion. Docket 130. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On August 20, 2018, Sandersfeld pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 35, 47. On February 1, 2019, the court sentenced Sandersfeld to 240 months in custody followed by 5 years of supervised release. Docket 93 at 2; Docket 94 at 2-3. Sandersfeld's sentence was later reduced to 120 months in custody. Docket 106 at 2. His projected date of release is September 25, 2026. Docket 129 at 147.

Sandersfeld is incarcerated at FCI Sandstone, a low security federal correctional institution in Sandstone, Minnesota. Docket 126 at 1; *FCI Sandstone*, Fed. Bureau of Prisons, https://www.bop.gov/institutions/sst/ (last visited Dec. 7, 2021). The total population at FCI Sandstone is 960 persons. *Id.*

1

In support of his motion, Sandersfeld argues the current circumstances at FCI Sandstone coupled with his positive COVID-19 diagnosis warrants early release. Docket 126 at 1-3. Sandersfeld submitted a request for compassionate release to the warden on August 1, 2021. Docket 126-1 at 2. The warden denied his request on August 20, 2021. *Id.* at 1. On October 7, 2021, Sandersfeld filed a pro se motion with the court for relief under the First Step Act. Docket 126.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the safety of others." USSG § 1B1.13(1)-(2) (Nov. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c)

2

rests with the defendant. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

Sandersfeld argues that the global COVID-19 pandemic, his prior COVID-19 diagnosis, and the current conditions of FCI Sandstone satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 126 at 1-3; Docket 126-1 at 2.

## I. Administrative Exhaustion

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

On August 1, 2021, Sandersfeld submitted an administrative request for a reduction of sentence due to COVID-19. Docket 126-1 at 2. The warden denied the request on August 20, 2021. *Id.* at 1. Having presented his request to the warden and being denied, the court will presume Sandersfeld has satisfied the administrative exhaustion requirement and review the matter on the merits.[1]

---

[1] The warden's response states that if Sandersfeld is not satisfied with the decision, he may commence an appeal through the administrative remedy program within 20 days of the response. Docket 126-1 at 1. There is no indication that Sandersfeld appealed the decision administratively.

## II. Extraordinary and Compelling Reasons

The Sentencing Commission was directed by Congress to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t). The Sentencing Commission did so by limiting "extraordinary and compelling reasons" to four categories. USSG § 1B1.13, cmt. n.1(A)-(C) (2018). The four categories pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the BOP. USSG § 1B1.13, cmt. n.1(D).

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in many previous orders. *E.g., United States v. Shields*, 3:07-CR-30106-01-KES, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02-KES, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame*, 4:18-CR-40117-05-KES, 2020 WL 7212096, at *2-3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-01-KES, 2020 WL 7029873, at *2-3 (D.S.D. Nov. 30, 2020). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B.13, Application Notes 1(A)-(D) to guide its analysis. *See, e.g., Muhs*, 2021 WL 534517, at *3.

Sandersfeld contends that the ongoing COVID-19 pandemic in combination with the current modified operations of FCI Sandstone, and his prior COVID-19 diagnosis satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 126. Although Sandersfeld does not mention which application notes his circumstances fall under, the court will analyze Sandersfeld's circumstances under the medical conditions category, USSG § 1B1.13 Application Note 1(A), and the catch-all provision, USSG § 1B1.13 Application Note 1(D).

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, Sandersfeld has failed to show that his reasons for release rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence.

### A.   Medical Conditions Category, Note 1(A)

As relevant here, the medical conditions category applies when the defendant is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within a correctional facility and from which he is not expected to recover. USSG § 1B1.13 cmt. n. 1(A)(ii)(I).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) updated its current understanding of these risks. *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 7, 2021). The CDC states

5

individuals with the following conditions *can* be more likely to become severely ill from COVID-19: cancer, chronic kidney disease, chronic liver disease, chronic lung diseases (including moderate to severe asthma, chronic obstructive pulmonary disease (COPD), interstitial lung disease, cystic fibrosis, and pulmonary hypertension), dementia or other neurological conditions, down syndrome, diabetes (type 1 or type 2), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension), HIV infection, immunocompromised state, overweight and obesity, pregnancy, sickle cell disease or thalassemia, being a current or former smoker, having a solid organ or blood stem cell transplant, history of stroke or cerebrovascular disease, substance abuse disorders, and tuberculosis. *Id.*

The court has reviewed the medical records submitted in this case. Sandersfeld medical conditions include dermatitis, a prior COVID-19 diagnosis, and a prior smoking history. Docket 129 at 7. On May 26, 2021, Sandersfeld reported that he was a former smoker. *Id.* His medical records do not list the extent or the severity of his smoking history. *Id.* at 1-2, 7, 74, 134, 144. Additionally, his records reflect few clinical visits, prescribed medications, and medical conditions. *Id.* 1, 13, 74, 111, 115, 129, 138. This leads the court to believe that Sandersfeld is adequately healthy.

Although Sandersfeld does suffer from a medical condition recognized by the CDC, the court has required a more particularized showing of risk of serious illness from COVID-19 when evaluating compassionate release motions. Sanderfeld's prior smoking history does not prevent him from providing self-care

6

in a correctional facility setting, and his medical conditions do not amount to extraordinary and compelling circumstances.

Furthermore, Sandersfeld has already recovered from COVID-19. *Id.* at 134. On October 27, 2020, Sandersfeld was placed in quarantine after being exposed to COVID-19. *Id.* at 120. Sandersfeld tested positive for COVID-19 on December 2, 2020, and his vital signs were monitored. *Id.* at 115, 121, 136. His symptoms included fatigue, aches and pains, headache, and chest pain. *Id.* As a result, he was prescribed ibuprofen to manage his symptoms. *Id.* at 116. Sandersfeld was advised on his access to care, his hand and respiratory hygiene, and his plan of care. *Id.* Following his initial appointment, his chief complaint was headaches and congestion. *Id.* at 124-131. His symptoms were managed with antipyretic medication and fluids. *Id.* Sandersfeld was released from quarantine on November 13, 2020. *Id.* at 74. On April 28, 2021, Sandersfeld received his first dose of a Moderna COVID-19 vaccine. *Id.* at 9. He received his second vaccine on May 25, 2021 and achieved full vaccination status on June 8, 2021.[2] *Id.*

Additionally, the COVID-19 pandemic alone is insufficient to warrant early release. The BOP has made significant changes to correctional operations since the pandemic started in early 2020. *See BOP COVID-19 Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last

---

[2] The CDC states that, "In general, people are considered fully vaccinated 2 weeks after their second dose in a 2-dose series[.]" *See When You've Been Fully Vaccinated,* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited Dec. 7, 2021).

visited Dec. 7, 2021). These include sanitary and safety measures, restrictions on movement, and visitation restrictions, among others. *Id.* The BOP has also transferred many thousands of inmates to home confinement. *See Frequently Asked Questions Regarding Potential Inmate Home Confinement in Response to the COVID-19 Pandemic,* Fed. Bureau of Prisons https://www.bop.gov/coronavirus/faq.jsp (last visited Dec. 7, 2021). Since March 26, 2020, to the present, 35,277 inmates have been placed in home confinement. *Id.* These measures have led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduces the strain on BOP resources.

    Sandersfeld asserts that the additional measures implemented by the BOP fall short in protecting inmates, but the data contradicts his statements. As of December 7, 2021, there are currently no active COVID-19 cases among FCI Sandstone's inmates. *See BOP: COVID-19 Update*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 7, 2021). FCI Sandstone has reported one inmate death from COVID-19, and 571 inmates have recovered as of December 7, 2021. *Id.* The total population at FCI Sandstone is currently 960 persons. https://www.bop.gov/locations/institutions/sst/ (last visited Dec. 7, 2021). The reported information demonstrates the COVID-19 outbreak at FCI Sandstone was widespread, but not devastating. This persuades the court that FCI Sandstone has acted appropriately to treat inmates who contracted COVID-19. The court believes the facility will continue to appropriately treat inmates who do so.

    The BOP's vaccination program for staff and inmates is another protective measure warranting consideration in this stage of the COVID-19 pandemic. The

BOP has implemented a COVID-19 vaccination plan to protect inmates and staff and limit the transmission of COVID-19 within the facilities. *See COVID-19*, Fed. Bureau of Prisons https://www.bop.gov/coronavirus/ (last visited Dec. 7, 2021). As of Dec. 7, 2021, 262,650 doses have been administered systemwide. *Id.* At FCI Sandstone, 171 staff and 847 inmates were fully inoculated as of December 7, 2021. *Learn More About Vaccinations and View Individual Facility Stats*, https://www.bop.gov/coronavirus/ (last visited Dec. 7, 2021).

These efforts to limit the spread of COVID-19 and protect inmates appear to be working. As of December 1, 2021, the BOP reported only 210 federal inmates have confirmed positive test results for COVID-19 nationwide. *See BOP: COVID-19*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 7, 2021). There are currently over 134,000 federal inmates in BOP-managed facilities. *Id.*

In light of the above, the court finds Sandersfeld's circumstances do not clear the high bar necessary to warrant compassionate release for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i).

### B. Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, cmt. n.1(D). The court is not convinced that "extraordinary and compelling reasons" exist to release Sandersfeld from custody early.

### III. Sentencing Factors of § 3553(a)

The 3553(a) sentencing factors further show that compassionate release is not warranted. Sandersfeld's conviction stems from a conspiracy to distribute a controlled substance. Sandersfeld's involvement dates back to January of 2006 when law enforcement received information that Sandersfeld was involved in the distribution of methamphetamine. Docket 72 at ¶ 9. In 2010, the Sioux Falls Police Department learned that Sandersfeld was making methamphetamine. *Id.* ¶ 10. During a separate narcotic investigation, officers were informed that Sandersfeld was selling large amounts of methamphetamine, approximately three pounds a week. *Id.* ¶¶ 11-12. Law enforcement conducted a search warrant on Sandersfeld's and his co-defendant's home. *Id.* ¶¶ 13-14. The search warrant produced ammunition, drug paraphernalia, $13,000 in cash, and various bags of methamphetamine with a total weight of 87.6 grams. *Id.* at ¶¶ 14-15. Further investigation revealed that Sandersfeld purchased and supplied large amounts of methamphetamine to his co-conspirator. *Id.* ¶¶ 18-19, 22-24. The total amount of drugs attributed to Sandersfeld was 5.9 kilograms. *Id.* ¶ 30.

At sentencing, the Court considered his criminal history category of IV, his offense level of 36, his role in the conspiracy, and the sentences of other individuals involved in the conspiracy. *Id.* at ¶ 62; Docket 97 at 50, 66-67. The court downward varied and sentenced Sandersfeld to 240 months in custody. Docket 97 at 67-68. Sandersfeld's sentence was further reduced to 120 months. Docket 106 at 2. After careful consideration, the court concludes Sandersfeld's sentence of 120 months continues to be appropriate for the seriousness of the

crime to which he pleaded guilty.

## CONCLUSION

Sandersfeld has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that the defendant's motion for compassionate release under the First Step Act (Docket 126) is denied.

Dated December 7, 2021.

                                                BY THE COURT:

                                                */s/ Karen E. Schreier*
                                                KAREN E. SCHREIER
                                                UNITED STATES DISTRICT JUDGE

Case 4:18-cr-40019-KES   Document 131   Filed 12/07/21   Page 11 of 11 PageID #: 1372